# PETITION UNDER 28 U.S.C. § 2254 FOR WRIT
# OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Middle District of Florida, Ocala Division |
|---|---|
| Name (under which you were convicted):<br><br>MARRIO WILLIAMS | Docket or Case No.:<br><br>5:23-cv-544 |

| Place of Confinement :<br>CENTURY CORRECTIONAL INSTITUTION<br>400 TEDDER ROAD, CENTURY, FLORIDA 3659 | Prisoner No.:<br><br>157562 |
|---|---|

| Petitioner (include the name under which you were convicted)     Respondent (authorized person having custody of petitioner) |
|---|
| MARRIO WILLIAMS     v.     SECRETARY OF DEPARTMENT OF CORRECTIONS, STATE OF FLORIDA |
| The Attorney General of the State of FLORIDA |

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida

   110 N Apopka Avenue, Inverness FL 34450

   (b) Criminal docket or case number (if you know): ___2012-CF-1233___

2. (a) Date of the judgment of conviction (if you know): ___November 16, 2016___

   (b) Date of sentencing: ___November 16, 2016___

3. Length of sentence: ___Life Imprisonment___

4. In this case, were you convicted on more than one count or of more than one crime? ☐ Yes ☒ No

5. Identify all crimes of which you were convicted and sentenced in this case:

   Attempted First Degree Murder

6. (a) What was your plea? (Check one)

   ☒ (1) Not guilty     ☐ (3) Nolo contendere (no contest)

   ☐ (2) Guilty     ☐ (4) Insanity plea

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?_____

   _____

   _____

   (c) If you went to trial, what kind of trial did you have? (Check one) ☒ Jury ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing? ☒ Yes ☐ No

8.      Did you appeal from the judgment of conviction?                    ☒ Yes          ☐ No

9.      If you did appeal, answer the following:

(a) Name of court:_____Fifth District Court of Appeal_____

(b) Docket or case number (if you know):_____5D16-4144_____

(c) Result:_____Per curiam affirmed_____

(d) Date of result (if you know):____The opinion was filed on November 21, 2017. The mandate was issued on

December 15, 2017._____

(e) Citation to the case (if you know):_____

(f) Grounds raised:_____(1) the trial court erred in denying the request to access and ability to DNA test the physical

evidence found at the scene which was relevant to the Petitioner's theory of defense; (2) the court erred in excluding

testimony of defense witnesses that Quadrey Sweeney admitted to involvement in prior offense using the same firearm

which killed the victim._____

(g) Did you seek further review by a higher state court?                    ☐ Yes          ☒ No

If yes, answer the following:

(1)  Name of court:_____

(2)  Docket or case number (if you know):_____

(3)  Result:_____

_____

(4)  Date of result (if you know):_____

(5)  Citation to the case (if you know):_____

(6)  Grounds raised:_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?          ☐ Yes          ☒ No

If yes, answer the following:

(1)  Docket or case number (if you know):_____

(2)  Result:_____

_____

(3)  Date of result (if you know):_____

(4)  Citation to the case (if you know):_____

10.     Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

        concerning this judgment of conviction in any state court?                        ☒ Yes          ☐ No

11.     If your answer to Question 10 was "Yes," give the following information:

        (a)     (1) Name of court: Fifth District Court of Appeal

                (2) Docket or case number (if you know):    5D18-203

                (3) Date of filing (if you know):    January 16, 2018

                (4) Nature of the proceeding: Petition alleging ineffective assistance of appellate counsel pursuant to Florida

                Rule of Appellate Procedure 9.141

                (5) Grounds raised:

                 (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

                        ☐ Yes          ☒ No

                (7) Result:    Denied

                (8) Date of result (if you know):    Denied on May 7, 2018; Rehearing denied on May 31, 2018

        (b) If you filed any second petition, application, or motion, give the same information:

                (1) Name of court:        Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida

                (2) Docket or case number (if you know):    2012-CF-1233

                (3) Date of filing (if you know):    Filed with Clerk on March 22, 2019; mailbox rule filed on March 18,

                2019

                (4) Nature of the proceeding:        Motion to Correct Illegal Sentence

                (5) Grounds raised:        Petitioner's sentence was illegal on the face of the record

                (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

                        ☐ Yes          ☒ No

                (7) Result:        Denied

                (8) Date of result (if you know):    April 25, 2019

        (c) If you filed any third petition, application, or motion, give the same information:

                (1) Name of court:        Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida

                (2) Docket or case number (if you know):    2012-CF-1233

                (3) Date of filing (if you know):    June 24, 2019 (with clerk); June 20, 2019 (mailbox rule)

                (4) Nature of the proceeding:        Motion for Postconviction Relief arguing ineffective assistance of

                counsel pursuant to Florida rule of criminal procedure 3.850

(5) Grounds raised:          (1) counsel was ineffective for making a bare-bones motion for judgment of acquittal; (2) counsel failed to argue that Fla. Stat. Section 90.804 was unconstitutional as applied to Petitioner's case; (3) counsel was ineffective for failing to object to conflict that arose when court instructed the jury on both the principal theory and alibi instruction; (4) counsel failed to argue fundamental error on direct appeal; (5) counsel failed to request that the jury be instructed on Manslaughter by culpable negligence as a lesser-included offense; (6) counsel was ineffective for filing a bare bones motion for new trial; (7) ineffective counsel for failing to support her objection to the court allowing the State to include the language "and/or accomplice" in the instruction for First-Degree Murder; (8) ineffective counsel for failure to file a motion to strike or quash the Indictments issued in his case; (9) ineffective counsel for failure to hire a voice analysis expert for the Defense; (10) ineffective for failure to effectively represent Petitioner during plea negotiations; (11) counsel failed to obtain a video surveillance tape containing exculpatory footage; (12) ineffective counsel for conceding the Petitioner's presence at the scene of the crime; (13) ineffective for failing to have Petitioner's mental health evaluated prior to trial.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

⊠  Yes          ☐  No

(7) Result:_____Denied_____

_____

(8) Date of result (if you know):_____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:          ⊠  Yes          ☐  No

(2)  Second petition:          ⊠  Yes          ☐  No

(3)  Third petition:          ⊠  Yes          ☐  No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:_____

_____

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE: THE PETITIONER'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT DENIED HIS REQUEST TO ACCESS AND TEST PHYSICAL EVIDENCE FOR DNA THAT WAS FOUND AT THE CRIME SCENE, WHICH WAS ULTIMATELY RELEVANT TO THE THEORY OF INNOCENCE AND FAILING TO GIVE HIM OPPORTUNITY DENIED HIM OF HIS RIGHT TO A FAIR TRIAL AND DEFENSE**

(a)      Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Several pre-trial motions in limine were filed and heard including the Petitioner's motion to compel DNA testing of cigarette butts found at the scene of the murder, which was denied by the court. A hearing on the motion to compel DNA testing of the cigarette butts was held on August 12, 2015. Petitioner's counsel asserted that a DNA test on the cigarette butts could exonerate Petitioner. The State argued that the defense had not presented a sufficient legal or factual foundation to warrant DNA testing of the cigarette butts, especially four years after the murder. Additionally, the State argued that the motion filed by defense would not even meet the standard for a Rule 3.853 post-conviction DNA test. The trial court denied the motion to compel DNA tests of the cigarette butts and found that the defense presented an insufficient showing of their need of this matter. The Petitioner renewed the motion for DNA testing at the beginning of trial. No physical evidence placed the Petitioner at the scene of the shooting, and no eyewitness saw him or his car at the shooting scene. Therefore, corroboration of physical evidence not matching the Petitioner could have created a reasonable doubt and was significantly critical to the outcome of the verdict. The Petitioner's inability to present his full theory of defense violated his right to a fair trial and due process. It was further prejudicial because the jury obviously wanted to know more about the cigarette butts. The jury picked up on the significance of the cigarette butts as during deliberation they asked to review pictures of the scene with the cigarette butts, and specifically inquired as to what brand of cigarette butts were found. Information from testing of the cigarette butts would have produced results that would have affected the verdict.

(b)      If you did not exhaust your state remedies on Ground One, explain why:

(c)      **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☒  Yes          ☐  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☒ No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

Docket or case number (if you know):_____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):_____

(3) Did you receive a hearing on your motion or petition?                    ☐ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?              ☐ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed:_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground One:_____

_____

**GROUND TWO: THE PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO FULLY INVESTIGATE THE PETITIONER'S COMPETENCY AND MOVE FOR AN EVALUATION OF SUCH PRIOR TO TRIAL, RESULTING IN HIS CONSTITUTIONAL RIGHTS BEING VIOLATED**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):_____

_____After the Petitioner's arrest, but prior to trial, it was ordered that an inquiry be undertaken as to the Petitioner's

mental state and whether he met the criteria of "intellectual disability" so as to bar execution pursuant to Florida Rule

of Criminal Procedure 3.203. Several doctors were appointed to evaluate the Petitioner, and ultimately, the trial court

entered an Order Declaring Petitioner Intellectually Disabled. The order stated that "all parties agree that the Court

may review and consider as evidence the number of reports (as attached to this order) submitted by the concerned

mental health professionals who performed evaluations of the defendant in this matter together with the school records of the defendant as reviewed by the professionals. Additionally, the Court has had the opportunity to observe and listen to the defendant in open court on past proceedings and today. Counsel for both parties agree that the Defendant at this time meets the criteria as set forth in Rule 3.203 such that the death penalty is not applicable to this Defendant with regard to this case." The evaluations that were considered by the court at the time of this order were: (1) an evaluation conducted on February 4, 2014 by Dr. Michel J. Herkov, Ph.D., ABPP; (2) an evaluation conducted on May 31, 2015 by Dr. Louis Legum, Ph.D.; and (3) an evaluation conducted on August 18, 2015 by Dr. Gregory A. Prichard, Psy.D. Pursuant to Dr. Herkov's evaluation, the Petitioner achieved a full scale IQ score of 62. This score falls into the extremely low range and corresponds to the 1st percentile, indicating that the Petitioner is functioning at an intellectual level equal to or better than only 1% of his same aged peers. Dr. Herkov made the following findings: "Mr. Williams is a 28-year-old black male referred for Intellectual evaluation by his attorney for information regarding his current level of cognitive function. Results from the present evaluation indicate that Mr. Williams has significant cognitive impairments. His current Full Scale IQ score is extremely low and falls well over two standard deviations below the mean (1st percentile). This Full Scale IQ Score would have been described In DSM -IV is falling into the Mild Mentally Retarded range. Under the new nomenclature of DSM-5 he would be classified with  Intellectual Disability-mild . This diagnosis is used for individuals who manifest significant intellectual impairment as evidenced by low performance on standardized measures of intellectual functioning as well as impairment in the adaptive functioning in conceptual, social and practical domains. Mr. Williams' current IQ score clearly meets this criterion and falls at the 1st percentile. Additionally, he has a history of impairment in conceptual functioning as evidenced by his academic record and special education classes. While the provided school records did not provide any specific IQ testing results, they clearly reflect his classification as "educable mentally retarded", indicating extremely low IQ. Mr. Williams also manifests impairment in the adaptive social domain as evidenced by his communication difficulties, lack of social sophistication, and history of difficulty regulating his emotion/behavior in age-appropriate ways. This is clearly supported by his self-report and the school record. Finally, Mr. Williams is impaired in practical adaptive functioning as illustrated by his limited work history, government disability check, and inability to function adequately on his own. He has failed to demonstrate the capacity to function independently in terms of major areas of adaptive functioning. Mr. Williams also meets Florida statute 393.063 definition of mental retardation is illustrated by his subpar intellectual test score (two standard deviations below the mean) and his deficits in adaptive functioning. Given the current test scores and his academic, developmental, and adaptive functioning deficits, a Mr. Williams' cognitive deficits should be viewed as developmentally based and permanent. His prognosis for any improvement in his

cognitive function is extremely poor." The evaluation conducted by Dr. Louis Legum reflected similar findings. "Marrio Williams is a 30-year-old defendant who has been seen for a court-ordered confidential psychological evaluation principally directed towards determining whether he meets the statutory criteria that defines intellectual disability. The issue of intellectual disability has been raised as a consideration of the possibility of the imposition of the death penalty in a case of first-degree murder for which he is being prosecuted. A telephone interview with the defendant's mother indicates that her son has established a history of mild developmental delay. There is documentation that the defendant was seen to be eligible for EMH and Language Impaired services in the public school system in which he was enrolled. In this context, an EMH placement is typically assigned to children with IQ scores in the 60s. this determination has also been in accord with an intellectual evaluation of the defendant in February of 2014, which yielded a Full Scale IQ equal 62 on the basis of a standardized individualized test of cognitive ability. The present evaluation of Mr. Williams included an assessment of malingering with a determination that there was no indication that he was willfully falsifying or exaggerating his fundamental knowledge base. A screening of educational abilities is in accord with the defendant's documented history of ESE placement, as well as his IQ. Specifically, the defendant is revealed to have no more than a third grade level of basic reading skills. The defendant's functional capabilities were also assessed with the administration of a standardized instrument of adaptive behavior. The results of this instrument give indication of an individual who has significant deficits in terms of the kinds of skills necessary for successful autonomous functioning. In sum, available historical information on the defendant from an intellectual evaluation from 2014, as well as this clinical examination, indicates that the defendant meets the statutory criteria that define intellectual disability. Specifically his intellectual disability was established before the age of 18; his cognitive abilities were more than two standard deviations below the norm on an accepted test of individual intellectual ability; and he is also found to have significant deficits in adaptive functioning." Dr. Prichard's report reflected similar findings. Of importance to the instant motion, Dr. Prichard noted that the Petitioner was "not very bright. He's slow to process, does not always understand, and is inarticulate when attempting to explain things." *Id.* During the Petitioner's trial, testimony from Dr. Louis Legum was presented. Dr. Legum, a licensed psychologist, provided testimony about the Petitioner's intellectual disability. Dr. Legum's testimony was consistent with the reports and evaluations of the other doctors. At the conclusion of his testimony, trial counsel engaged in the following exchange: Q: Okay. But in terms of his ability to read police reports or read depositions or read discovery materials that he might have, would he have significant difficulty with them? A: Based upon his educational history, based upon the test results, based upon his personal history, I would find it very unlikely that he could comprehend complexities of some of those documents. As I said, he has only a third grade level of reading ability. And he's got an IQ that places him in

the range of intellectual disability. In his postconviction motion, the Petitioner argued that counsel was deficient for failing to fully investigate the issue of competency and have him evaluated before trial. An evidentiary hearing was ultimately granted on the issue and several witnesses were called. The first witness to testify was the Petitioner. During the hearing, the Petitioner testified that he did not understand what the word "competency" meant, even as he sat in the courtroom that day. While his case was pending, he had originally been notified that the State could seek the death penalty and later, that option was taken off the table. Around the time it was taken off the table as a possibility, the Petitioner was evaluated by several doctors – he believed it was three evaluations. The Petitioner was made aware that they could no longer seek the death penalty because he had been labeled as intellectually disabled. The Petitioner testified that outside these evaluations, he did not discuss his mental health with trial counsel or discuss his education or schooling history with her. The only person that the Petitioner recalled having any conversations with was the investigator, who advised him that the doctors would be coming out to conduct the evaluations. The Petitioner was provided a copy of his discovery while he waited for trial, but he could not read the discovery. Moreover, trial counsel never went over the full contents of the discovery with him. The Petitioner described his relationship with counsel as good, except he felt that he could not and did not know how to communicate with her. The Petitioner did not feel like he could have a conversation with her about his case or the facts of his case. Even when he tried to tell her about his version of events, from his perspective, he didn't feel like he was able to relay that information to counsel. The Petitioner never understood what the State was required to prove at trial and counsel never explained this to him. This case was the first case that the Petitioner had gone to trial in, even though he had previously been arrested and convicted. When asked why he didn't tell counsel about how he felt concerning his inability to explain things to her, the Petitioner testified that he "didn't understand. I didn't understand nothing – nothing that was going on. I just thought that she was the attorney and she was going to represent me and that's all I knew." The Petitioner didn't feel like he understood what was going on during trial and he didn't feel comfortable to ask counsel about it at the time. The next witness called to testify was BeJae Shelton. From 2013 to 2016 Ms. Shelton assisted trial counsel with the representation of the Petitioner. Ms. Shelton did not see anything during his representation that led him to believe that the Petitioner was incompetent. Further, several doctors evaluated him and none of them made any indication that he was not competent. Dr. Herkov was the first person to evaluate him and he did come back with concerns about intellectual disability, but nothing about competency. Ms. Shelton recalled discussing the facts of the case with the Petitioner, and the Petitioner appeared to understand what they were saying "for the most part." On cross-examination, Ms. Shelton admitted that because this was originally a death penalty case, doctors would have been sent out to evaluate the Petitioner always. However, for this specific defendant, their mitigation specialist raised specific concerns

about the Petitioner's intellectual disability and believed that the evaluations needed to be tailored to that. Ms. Shelton admitted that there was nothing about competency or any consideration of the Petitioner's current competency level in Dr. Herkov's report. Ms. Shelton further testified that this was not a factually or legally complicated case in his opinion, and the Petitioner was relatively laid back as a client. However, the Petitioner still did have questions and did not understand a lot of the legal aspects of the case. Trial counsel, Ann Finnell, was the next witness called to testify at the evidentiary hearing. Ms. Finnell testified about her interaction with the Petitioner and if she believed he ever displayed any signs of incompetency. "No, not his competency. I mean, I did have him examined early on. It was a death case. The State had filed a death notice and so I had made application with the Court for appointment of an expert to help me with a global assessment, initial assessment of Mr. Williams, which would include competency, sanity, intellectual performance, potential mitigation in the case from a death penalty point of view. And, to be honest with you, I -- I had not picked up on anything with Mr. Williams. My mitigation specialist, really, Ms. Bolin picked up on the fact that she thought maybe that he had an intellectual disability. And so in addition to the global assessment for competency and sanity, I asked Dr. Herkov to perform intellectual testing to determine if, in fact, he had an intellectual disability, which was done." Ms. Finnell admitted that she didn't notice the signs of the intellectual disability and it was only after her mitigation specialist brought it to her attention that she had him evaluated for such. She also admitted that the Petitioner's reading skills were "not good at all" but she wouldn't sit down and go through the discovery page-by-page with him. Instead, she would summarize what she provided to him. Ms. Finnell testified that although intellectual disability and competency are two different things, it is true that intellectual disability can contribute to a defendant's ultimate incompetence. The next witness to testify was Attorney Robert Christensen. Mr. Christensen represented the Petitioner in 2009, over three years before the offense that led to his arrest in the instant case. Mr. Christensen testified that while representing the Petitioner in that matter, although he didn't have a specific recollection of anything, he couldn't find any notes that indicated he had concerns about the Petitioner's competency. Similar to Mr. Christensen, the State also called Attorney Charity Braddock who had previously represented the Petitioner in 2012. Ms. Braddock, however, had only ever met with the Petitioner a single time for approximately 30 minutes. The final witness was Attorney Thomas Devon Sharkey who also represented the Petitioner in 2012. Mr. Sharkey could not recall ever believing that the Petitioner was incompetent. The state court denied the Petitioner's motion following the hearing. The court found that "[b]ased on the testimony and evidence presented at the hearing, this Court finds that Defendant has failed to meet his burden under *Strickland*. Three evaluations were conducted on Defendant by three separate doctors, and none of them found anything that raised issues of competency, only intellectual disability. Neither Ms. Finnell nor Ms. Shelton had any concern regarding Defendant's competency, nor

did any of Defendant's prior attorneys that previously represented him in other matters. The testimony and evidence show that Defendant was able to effectively communicate with his attorneys. He actively participated in the discussion about the facts and strategy for defense in his case. At no point did Defendant appear to not understand what was going on. Nothing was presented that could have demonstrated a reasonably competent attorney would have questioned Defendant's competency to proceed. Defendant's intellectual disability alone is not enough to raise concern about competency. Intellectual disability and competency are not like an apple and an orange, but more like the difference between an orange and a dump truck-they may be the same color but totally different aspects."

(b)      If you did not exhaust your state remedies on Ground Two, explain why:_____

_____

(c)      **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?            ☐  Yes        ☒  No

(2) If you did not raise this issue in your direct appeal, explain why:____Claims concerning ineffective assistance of counsel are not appropriate for direct appeal and the best vehicle to argue those claims are a motion for postconviction relief._____

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      ☒  Yes        ☐  No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

          Type of motion or petition:_____Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850_____

          Name and location of the court where the motion or petition was filed:__Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida_____

          Docket or case number (if you know):_____2012-CF-1233_____

          Date of the court's decision:_____

          Result (attach a copy of the court's opinion or order, if available):_____Denied after evidentiary hearing___

(3) Did you receive a hearing on your motion or petition?                              ☒  Yes        ☐  No

(4) Did you appeal from the denial of your motion or petition?                          ☒  Yes        ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒  Yes        ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed:_____Florida Fifth District Court of Appeal_____

Docket or case number (if you know):_____5D22-343_____

Date of the court's decision:_____May 23, 2023 (mandate issued on June 16, 2023)_____

Result (attach a copy of the court's opinion or order, if available):_____Per curiam affirmed_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you:

have used to exhaust your state remedies on Ground Two:_____

_____

## GROUND THREE: THE PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO MOVE FOR A LEGALLY SUFFICIENT MOTION FOR JUDGMENT OF ACQUITTAL

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):_____

_____After the State rested in the instant case, trial counsel moved for a judgment of acquittal. However, rather than artfully presenting a motion based on the facts and circumstances of the case, trial counsel argued that the State's only evidence was the word of its witness, Mr. Williams, and that its other witnesses were impeached. Trial counsel did not make any argument regarding the theory of Defense, nor did she explain how through its witnesses the State failed to refute the Petitioner's probable innocence. After his conviction, Petitioner argued that counsel was ineffective for failing to make an adequate motion for judgment of acquittal. The state court denied the claim, without a hearing, finding that "The Defendant's mere disagreement with the exact arguments made by trial counsel is not enough to show deficiency by trial counsel. Trial counsel sufficiently attacked the evidence presented against the Defendant by setting forth the weaknesses in the evidence and not making a general bare bones argument. Therefore, the Defendant has failed to show any deficiency by trial counsel and ground one is denied."

(b)     If you did not exhaust your state remedies on Ground Three, explain why:_____

_____

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☐ Yes          ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:_____Claims concerning ineffective assistance of counsel are not appropriate for direct appeal and the best vehicle to argue those claims are a motion for postconviction relief._____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

Type of motion or petition:          Motion for Postconviction Relief, pursuant to Florida Rule of Criminal

Procedure 3.850

Name and location of the court where the motion or petition was filed:  Circuit Court of the Fifth Judicial

Circuit, in and for Citrus County, Florida

Docket or case number (if you know):          2012-CF-1233

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):          Denied  after  evidentiary  hearing

(but no hearing was granted on this specific claim)

(3) Did you receive a hearing on your motion or petition?                    ☒ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?              ☒ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?        ☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed:          Florida Fifth District Court of Appeal

Docket or case number (if you know):          5D22-343

Date of the court's decision:          May 23, 2023 (mandate issued on June 16, 2023)

Result (attach a copy of the court's opinion or order, if available):          Per curiam affirmed

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR: THE PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO OBJECT TO THE INSTRUCTIONS AS GIVEN, OR REQUEST AN APPROPRIATE INSTRUCTION FOR THE JURY TO CONSIDER**

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

During trial, the evidence presented by the State alleged that Curtis Wilson traveled with the Petitioner

from St. Petersburg, Florida, to Citrus County. The Petitioner drove Mr. Wilson, but was unaware that he was planning on killing the victim when they arrived in Citrus County. In his postconviction motion, the Petitioner submitted that such evidence established that he did not have the requisite premeditated intent to commit first-degree murder, but instead could be found guilty of manslaughter by culpable negligence. Despite this, the jury was never appropriately instructed on the lesser-included offense and ultimately found the Petitioner guilty as charged. He argued that counsel was ineffective for failing to request the instruction or objecting to the instructions as given. The state court denied the Petitioner's claim, without a hearing, finding that counsel had no basis to make a request for the instruction.

(b)    If you did not exhaust your state remedies on Ground Four, explain why:_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☐ Yes          ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:    Claims concerning ineffective assistance of counsel are not appropriate for direct appeal and the best vehicle to argue those claims are a motion for postconviction relief.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

         ☒ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

         Type of motion or petition:          Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850

         Name and location of the court where the motion or petition was filed:  Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida

         Docket or case number (if you know):          2012-CF-1233

         Date of the court's decision: _____

         Result (attach a copy of the court's opinion or order, if available):          Denied after evidentiary hearing (but no hearing was granted on this specific claim)

(3) Did you receive a hearing on your motion or petition?                            ☒ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?                       ☒ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed:_____Florida Fifth District Court of Appeal_____

Docket or case number (if you know):_____5D22-343_____

Date of the court's decision:_____May 23, 2023 (mandate issued on June 16, 2023)_____

Result (attach a copy of the court's opinion or order, if available):_____Per curiam affirmed_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you:

have used to exhaust your state remedies on Ground Four:_____

_____

## GROUND FIVE: THE PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO RAISE A LEGALLY SUFFICIENT MOTION FOR NEW TRIAL AFTER THE JURY'S GUILTY VERDICT

(a)    Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):_____

_____In the instant case, trial counsel filed a motion for new trial. However, several of the claims contained therein were underdeveloped, which resulted in the motion being denied. Trial counsel's claims in the motion included: (1) Error in denying the Defense's pretrial *Daubert* challenge; (2) Error in denying pretrial access to certain evidence; (3) Error in exclude *Williams* Rule evidence; (4) Error in permitting the State to introduce the charging Information in the Appellant's co-defendant's case; (5) Error in admitting improper hearsay testimony; (6) Error in severing trials; (7) Error in denying the Appellant a twelve-person jury; (8) Error in failing to strike the jury panel; (9) Error in permitting the State to utilize exhibits in its opening statement; and other claims. On postconviction motion, Petitioner argued that counsel's arguments for each point were lacking, were not fully developed, and/or were not in a position that the court could actually rule on them legally. Petitioner specifically noted: "(1) Trial counsel argued that the trial court erred in denying the Appellant's challenge to the State's expert under Daubert. The Appellant argued that counsel failed to explain how, exactly, the court erred by denying the challenge, and why the expert's testimony did not qualify him as an expert; (2) Trial counsel argued that the trial court erred in denying the Appellant pretrial access to discovery. The Appellant argued that counsel's motion failed to address why the lack of access to such evidence was critical to his Defense; (3) Trial counsel argued that the trial court erred in denying the Defense's motion in limine to exclude similar fact evidence. The Appellant argued that counsel failed to address why such a denial required a new trial; (4) Trial counsel argued that the trial court erred in allowing the State to introduce the Information charged the Appellant's co-defendant with drug sales. The Appellant argued

that trial counsel failed to assert why the introduction of the evidence was so prejudicial as to warrant a new trial; (5) Trial counsel argued that the trial court erred in admitting hearsay evidence during the Appellant's trial. The Appellant argued that trial counsel failed to outline whether the hearsay evidence contributed to his conviction; (6) Trial counsel argued in her motion for new trial that the trial court erred in failing to sever the Appellant's case from his co-defendant. The Appellant argued in his Motion that trial counsel failed to outline how he was prejudiced by the trial court's error; (7) Trial counsel argued in her motion for new trial that the trial court erred in denying the Appellant's motion to strike the jury for its failure to show a cross-section of the community. The Appellant argued that trial counsel erred in failing to include any cases to support her argument in her motion; (8) Trial counsel argued in her motion that the trial court erred in allowing the State to utilize exhibits during opening statements when said exhibits had not yet been introduced into evidence. The Appellant argued in his Motion that trial counsel failed to outline how the Appellant was prejudiced in her motion; (9) Trial counsel argued in her motion that the lower court erred in admitting the victim's hearsay statements to her mother into evidence. The Appellant argued in his Motion that trial counsel's motion failed to outline how he was prejudiced by the introduction of the hearsay statements; (10) Trial counsel argued in her motion that the trial court erred in allowing the State to alter the time stamp on the Quality Inn surveillance video and photographs. The Appellant argued that trial counsel's motion was deficient because she failed to explain how the modification by the state was misleading and confusing to the jury; (11) Trial counsel argued that the trial court erred in allowing the State to use a summary of the cell phone records during trial. The Appellant submitted that trial counsel failed to argue how such a ruling was prejudicial; (12) Trial counsel argued in her motion that the trial court erred in allowing the State to publish redundant crime scene photographs and videos. The Appellant argued that trial counsel performed deficiently because she failed to explain how the photographs were prejudicial; (13) Trial counsel argued that the trial court erred in admitting various hearsay statements throughout trial. However, the Appellant explained, trial counsel failed to make timely objections and so failed to preserve the issue for appellate review; (14) Trial counsel argued that the trial court erred in admitting diagrams and maps when such evidence was speculative. The Appellant argued that trial counsel failed to outline how such evidence prejudiced his case; (15) Trial counsel argued that the trial court erred in denying the defense's objection to the jury instruction informing the jury that the penalty is up to the judge. The Appellant argued that trial counsel's argument was deficient; (16) Trial counsel argued in her motion that the trial court erred in allowing the State to include the language "and/or accomplice" in the instruction for first-degree murder. The Appellant argued in his Motion that trial counsel's argument was deficient; (17) Trial counsel argued in her motion that the trial court erred in denying her motion for judgment of acquittal. The Appellant argued that her motion, as expressed in Claim One, was deficient, and so her motion for new trial with

regard to the motion for judgment of acquittal was similarly insufficient; (18) Trial counsel argued that the verdict was contrary to the weight of evidence and contrary to the law. The Appellant argued that both of counsel's arguments were insufficient; and (19) Trial counsel argued that, cumulatively, the court's rulings deprived the Appellant of a fair trial. The Appellant again argued that the motion was insufficient." The trial court denied the claim, finding that "[a]lthough the Defendant argues the motion filed by trial counsel was a bare bones motion, it contained 25 specific errors, many of which were issues previously argued and ruled on by the Court. Although the motion did include some general statements, such as paragraphs 21 and 22, those statements are supported by the multitude of other specific errors set forth by trial counsel in the motion."

(b)    If you did not exhaust your state remedies on Ground Five, explain why:_____

_____

(c)    **Direct Appeal of Ground Five:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐ Yes        ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:    Claims concerning ineffective assistance of counsel are not appropriate for direct appeal and the best vehicle to argue those claims are a motion for postconviction relief.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

        Type of motion or petition:    Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850

        Name and location of the court where the motion or petition was filed: Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida

        Docket or case number (if you know):    2012-CF-1233

        Date of the court's decision: _____

        Result (attach a copy of the court's opinion or order, if available):    Denied after evidentiary hearing (but no hearing was granted on this specific claim)

(3) Did you receive a hearing on your motion or petition?                    ☒ Yes        ☐ No

(4) Did you appeal from the denial of your motion or petition?                ☒ Yes        ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☒ Yes        ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: _____ Florida Fifth District Court of Appeal _____

Docket or case number (if you know): _____ 5D22-343 _____

Date of the court's decision: _____ May 23, 2023 (mandate issued on June 16, 2023) _____

Result (attach a copy of the court's opinion or order, if available): _____ Per curiam affirmed _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you:

have used to exhaust your state remedies on Ground Five: _____

_____

**GROUND SIX: THE PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO ADEQUATELY REPRESENT PETITIONER DURING THE PLEA PROCESS**

(a)        Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

The Petitioner is serving a life sentence after going to trial during which the State extended no plea offers. Despite this, trial counsel did not attempt to engage in plea negotiations with the State on the Petitioner's behalf. Instead, just before trial, counsel informed the lower court "I have never been approached" with offers, and the court replied that the State does not make offers. Petitioner argued that counsel was ineffective for failing to engage in plea negotiations with the State. Instead, during the interim trial counsel similarly failed to have the Petitioner's mental health evaluated prior to proceeding to trial where he received a life sentence. Trial counsel had a duty to obtain the best possible result for the Appellant. At least engaging in plea negotiations to determine whether the State was amenable to a lower sentence was vital to the Petitioner's cause. However, trial counsel failed to engage in a single conversation.

(b)        If you did not exhaust your state remedies on Ground Six, explain why: _____

_____

(c)     **Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ☐ Yes          ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: _____ Claims concerning ineffective assistance of counsel are not appropriate for direct appeal and the best vehicle to argue those claims are a motion for postconviction relief.

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

Type of motion or petition:          Motion for Postconviction Relief, pursuant to Florida Rule of Criminal

Procedure 3.850

Name and location of the court where the motion or petition was filed:  Circuit Court of the Fifth Judicial

Circuit, in and for Citrus County, Florida

Docket or case number (if you know):          2012-CF-1233

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):          Denied  after  evidentiary  hearing

(but no hearing was granted on this specific claim)

(3) Did you receive a hearing on your motion or petition?                    ☒ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?              ☒ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed:          Florida Fifth District Court of Appeal

Docket or case number (if you know):          5D22-343

Date of the court's decision:          May 23, 2023 (mandate issued on June 16, 2023)

Result (attach a copy of the court's opinion or order, if available):          Per curiam affirmed

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Six:

## GROUND SEVEN: THE PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO INVESTIGATE EVIDENCE PRIOR TO TRIAL

(a)     Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In the instant case, trial counsel requested discovery from the State numerous times. Specifically,

trial counsel sought surveillance footage from the bank, which the Petitioner submits would have exonerated

him. Despite this, the State claimed that no such video surveillance footage existed, and so declined to provide such evidence to the Defense despite the court order to do so. Thereafter, during trial Detective Perry testified that he had viewed bank surveillance footage which depicted headlights of a vehicle. Once it became apparent that the State was not cooperating in the discovery process, trial counsel had several avenues available to her. First, she should have conducted an independent investigation to attempt to retrieve the surveillance footage. The record does not establish what steps, if any, counsel took to obtain the footage on her own. Second, trial counsel should have moved for a continuance during trial once it became apparent that the State had withheld evidence. At that point, trial counsel would have been able to coordinate with the State and Detective Perry to view the video footage and determine a course of action for the trial going forward. Third, trial counsel should have moved for a mistrial or a new trial. Trial counsel was wholly unprepared for the Petitioner's trial once Detective Perry testified. Trial counsel cannot have been said to performed sufficiently when she did not view all evidence against her client. In addition to the physical evidence, counsel failed to retain experts that would help explain the evidence that the State did introduce. Counsel's failure to do so was deficient.

(b)    If you did not exhaust your state remedies on Ground Seven, explain why:_____

_____

(c)    **Direct Appeal of Ground Seven:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐ Yes        ☒ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:___ Claims concerning ineffective assistance of counsel are not appropriate for direct appeal and the best vehicle to argue those claims are a motion for postconviction relief._____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Type of motion or petition:

        Type of motion or petition:_____ Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850_____

        Name and location of the court where the motion or petition was filed:_ Circuit Court of the Fifth Judicial Circuit, in and for Citrus County, Florida_____

        Docket or case number (if you know):_____ 2012-CF-1233_____

        Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____ Denied after evidentiary hearing

(but no hearing was granted on this specific claim)_____

(3) Did you receive a hearing on your motion or petition?                    ☒ Yes          ☐ No

(4) Did you appeal from the denial of your motion or petition?            ☒ Yes          ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed:_____ Florida Fifth District Court of Appeal

Docket or case number (if you know):_____5D22-343_____

Date of the court's decision:_____May 23, 2023 (mandate issued on June 16, 2023)_____

Result (attach a copy of the court's opinion or order, if available):_____Per curiam affirmed_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you:

have used to exhaust your state remedies on Ground Seven:_____

_____

13.      Please answer these additional questions about the petition you are filing:

(a)      Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?          ☒ Yes          ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:_____

(b)      Is there any ground in this petition that has not been presented in some state or federal court?  If so, ground

or grounds have not been presented, and state your reasons for not presenting them:_____

14.      Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that

you challenge in this petition?          ☐ Yes          ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of

any court opinion or order, if available._____

_____

_____

_____

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?              ☐ Yes          ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.

_____

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:          n/a

(b) At arraignment and plea:          n/a

(c) At trial:          Ann Finnell, 2114 Oak Street, Jacksonville, Florida 32204-4464

(d) At sentencing:  Ann Finnell, 2114 Oak Street, Jacksonville, Florida 32204-4464

(e) On appeal:    Allison Havens, 444 Seabreeze Blvd, Ste 210, Daytona Beach, FL 32118

(f) In any post-conviction proceeding:          Rachael E. Reese, O'Brien Hatfield Reese, P.A., 511 W Bay

Street, Suite 330, Tampa, Florida 33606

(g) On appeal from any ruling against you in a post-conviction proceeding:          Rachael E. Reese, O'Brien

Hatfield Reese, P.A., 511 W Bay Street, Suite 330, Tampa, Florida 33606

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

☐ Yes          ☒ No

(a)     If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

_____

(b)     Give the date the other sentence was imposed: _____

(c)     Give the length of the other sentence:_____

(d)     Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be

served in the future?          ☐ Yes          ☐ No

18.      TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.[1]

The Petitioner was sentenced on November 16, 2016. Thereafter, he appealed his judgment and sentence to the Fifth District

Court of Appeal (case number 5D16-4144). On November 21, 2017, the Fifth DCA affirmed the Petitioner's judgment and

sentence, without a written opinion. Thereafter, the Petitioner had ninety days to file a writ of certiorari to the United States

Supreme Court and as a result, his time under the AEDPA remained tolled until February 19, 2018. The Petitioner filed a 9.141

petition arguing ineffective appellate counsel before the end of the 90 day period, and therefore further tolled his time until that

was denied on May 31, 2018 (case number 5D18-203). Thereafter, 291 days time passed before Petitioner filed his Motion to

Correct Illegal Sentence with the state trial court on March 18, 2019 (per the mailbox rule). The Petitioner's time for purposes

of the AEDPA remained tolled while that motion was pending, until the appeal affirming the ultimate denial of said motion

was issued on August 16, 2019 (case number 5D19-1652). Prior to the date of that mandate, Petitioner had filed his Motion for

Postconviction Relief and thus, no further time lapsed. That motion remained pending until it was ultimately denied and

affirmed on appeal. The mandate was issued on June 16, 2023 (case number 5D22-343). Thereafter, Petitioner had 74 days

remaining to file the instant petition. As a result, it is timely filed.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

    (1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

        (A)   The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)   The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)   The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)   The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:    vacate the Petitioner's judgment and sentence, or alternatively, whatever relief the Court deems necessary.

or any other relief to which petitioner may be entitled.


/s/ Rachael E. Reese

Signature of Attorney (if any)

Rachael E. Reese
O'Brien Hatfield Reese, PA
511 W Bay Street, Suite 330
Tampa, FL 33606
(813) 228-6989
Florida Bar No.: 0111396


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on_____ (month, date, year).


Executed (signed) on _____ (date).


_____

Signature of Petitioner


If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

# *TO BE FILED BY SEPARATE COVER DUE TO DELAYS WITH PRISON MAILING SYSTEM*